# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MARCUS QUINN** | : | **DOCKET NO. 15-cv-1229** |
| **VERSUS** | : | **JUDGE DOHERTY** |
| **RONALD THERIOT** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for a writ of habeas corpus filed pursuant to 28 U.S.C §
2254, by counsel on behalf of Marcus Quinn ("petitioner"). Doc. 1. The petitioner is a prisoner in
the custody of the Louisiana Department of Public Safety and Corrections. At the time of filing he
was incarcerated at the St. Martin Parish Jail. Doc. 1, p. 9. The respondent, Sheriff Ronald Theriot,
opposes the application. Doc. 23.

This matter is referred to the undersigned for review, report, and recommendation in
accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons
**IT IS RECOMMEDED** that the application be **DENIED** and **DISMISSED WITH
PREJUDICE**.

## I.
### BACKGROUND

### A. *Conviction*

The petitioner was indicted in the Sixteenth Judicial District, Parishes of Iberia, St. Martin,
and St. Mary, Louisiana, on charges of possession with intent to distribute a Schedule II controlled
dangerous substance (cocaine), second degree kidnapping, and possession of drug paraphernalia.

Doc. 27, att. 15, p. 1. The charges related to an incident on June 29, 2004, in which the petitioner was discovered by police clutching a crack pipe and holding a woman against her will in the bedroom of a friend's home. Doc. 25, att. 1, pp. 46–48. After the petitioner released the woman, law enforcement recovered crack cocaine "and various items of drug paraphernalia" from the room. *Id.* at 48. The prosecution subsequently dismissed the drug paraphernalia charge. Doc. 27, att. 15, p. 1. The petitioner was then convicted by jury on February 16, 2005, of the responsive verdicts of possession of a controlled dangerous substance and false imprisonment. *Id.* at 2–3. He was sentenced to serve five years at hard labor on the possession conviction and six months in the parish jail on the false imprisonment conviction. *State v. Quinn*, 38 So.3d 1102, 1103 (La. Ct. App. 3d Cir. 2010).

The prosecution then filed a habitual offender bill alleging that the petitioner was a fifth felony offender. Doc. 27, att. 15, pp. 36–37. After determining that the petitioner was a multiple felony offender, the trial court vacated the five year hard labor sentence and sentenced him to twenty years at hard labor. Doc. 25, att. 1, pp. 16–18. The petitioner's attorney filed an oral motion to reconsider, which the sentencing judge denied. *Id.* at 18.

The petitioner appealed his conviction and sentence raising the following assignments of error in the Louisiana Third Circuit Court of Appeal:

1.   The evidence was insufficient to support the conviction of possession of a controlled dangerous substance.
2.   The sentence imposed for the possession count was excessive.
3.   The trial court erred in rejecting his motion for post-judgment acquittal without a hearing.

*Id.* at 48. The Third Circuit deemed the third claim abandoned due to the petitioner's failure to brief it and found no merit to his other claims. *Id.* at 48–52. However, it did conclude that the sentencing proceedings on the habitual offender adjudication were constitutionally invalid due to

the trial court's failure to properly advise the petitioner of his rights. *Id.* at 50–52. Accordingly, it ruled that the twenty year sentence must be vacated and the matter remanded for resentencing. *Id.* at 52.

On remand for resentencing, the petitioner was adjudicated as a third felony offender and sentenced to eight years on August 28, 2007. *Id.* at 26–28. The state then filed another multiple offender bill.[1] *Id.* at 39–40. However, the sentencing judge, Lori Landry,[2] recused herself from the proceeding due to the petitioner's family having supported her opponent in her 2008 reelection campaign. *Id.* at 34; doc. 27, att. 5, pp. 22–26. The case was then reallotted to Judge Keith Comeaux. Doc. 25, att. 1, p. 31. Judge Comeaux found the petitioner to be a fourth felony offender, subject to a sentence of twenty years to life, and sentenced him to the mandatory minimum term of twenty years' imprisonment at hard labor on June 24, 2009. Doc. 27, att. 12, pp. 33–36; doc. 27, att. 13, pp. 1–23.

### B.  Direct Appeal

The petitioner appealed the conviction and sentence resulting from the final habitual offender bill to the Third Circuit. *Quinn*, 38 So.3d at 1103. There he raised the following assignments of error:

> 1.  The mandatory minimum sentence of twenty years was unconstitutionally excessive.

---

[1] We could not locate in the record how the second habitual offender adjudication and sentence came to be vacated. Accordingly, we ordered both parties to submit memoranda on this issue. Doc. 32. They clarified that the state filed another habitual offender bill on the same day of Judge Landry's ruling on the second bill. *See* doc. 25, att. 1, pp. 39–40. It appears that this bill supplanted second habitual offender adjudication without further action by the trial court and came up for hearing on December 22, 2008, after Judge Landry's recusal. Doc. 27, att. 10, pp. 5–48; doc. 27, att. 11, pp. 1–33; doc. 27, att. 12, pp. 1–32. The Louisiana Supreme Court has held that "principles of res judicata or double jeopardy do not preclude the state in a single prosecution from adjudicating the defendant a third offender and then adjudicating him a fourth offender in a subsequent proceeding on the basis of a conviction and documentary evidence not used previously to determine his multiple offender status" as long as there exists no evidence that the state held these multiple hearings in order to harass or oppress the defendant.  *State v. Denis*, 692 So.2d 1055 (La. 1997) (per curiam).

[2] With the exception of a couple of pretrial motions, Judge Landry had presided over the petitioner's case since his arraignment on the 2004 cocaine possession offense. Doc. 25, att. 1, pp. 1–31.

2.  The trial court erred in allowing the state "to have as many 'do-overs' as it desired" in the habitual offender proceedings.

3.  The trial court erred in allowing the state to file its third habitual offender bill in violation of the petitioner's constitutional right to due process.

4.  The petit jury erred in returning a guilty verdict of possession of cocaine without sufficient evidence.

*Id.* at 1104–15. The appellate court reviewed all of the above and denied relief, affirming the conviction and sentence. *Id.* The petitioner then sought review in the Louisiana Supreme Court, which denied same on January 7, 2011. *State v. Quinn*, 52 So.3d 885 (La. 2011). It does not appear that he sought review in the United States Supreme Court. *See* doc. 1, p. 6.

### C.  State Post-Conviction Relief

The petitioner next filed an application for post-conviction relief through counsel on March 26, 2012, raising the following claims:

1.  Trial counsel was prejudicially ineffective for failing to file a motion to reconsider the petitioner's unconstitutionally excessive sentence.

2.  Appellate counsel was ineffective for failing to urge the three motions to reconsider sentence and the extensive arguments in support of a sentencing departure as a basis for the appellate court's consideration of the petitioner's excessive sentence claim.

3.  While the victims in the petitioner's prior simple robbery convictions were used to justify his excessive sentence, these victims themselves regard the petitioner's twenty year sentence as excessive and suggest that the crime was not a crime of violence. Trial counsel was ineffective for failing to put forth these facts at the petitioner's sentencing.

4.  A review of habitual offender cases from Iberia Parish demonstrates that the petitioner is the lone personal use possession drug offender sentenced under the law and that he is, consequently, the most harshly punished drug use offender. Trial counsel was ineffective for failing to raise this fact at sentencing.

5.  Trial counsel was ineffective for failing to move to quash the habitual offender bill of information based on prosecutorial vindictiveness or to move to recuse the district attorney's office that had singled the petitioner out for extraordinarily harsh treatment based on the political activities of his wife.

6. Trial counsel was ineffective for failing to file a motion to recuse the sentencing judge, who prosecuted the petitioner in an earlier case and cited that case in deciding that he would not depart from the mandatory minimum sentence.

7. Trial counsel was ineffective for failing to advise the petitioner to accept a plea to seven years or to advise him that he would otherwise face a mandatory minimum of twenty years as a habitual offender, even if acquitted of the most serious charges against him.

8. The recused trial court lacked authority to reallot the petitioner's case to Judge Comeaux, based on the state's motion to reconsider its allotment to Judge Porter. Judge Comeaux thus lacked jurisdiction to sentence the petitioner, rendering his sentence a nullity.

9. The petitioner was deprived of his right to counsel during the trial court's recusal hearing, a critical stage which determined the sentencing judge who had discretion to depart below the mandatory minimum sentence.

10. The United States Supreme Court's opinion in *Padilla v. Kentucky* bars the state's use of the petitioner's predicate convictions based on guilty pleas for habitual offender sentencing when he was not advised that these convictions could result in enhanced sentencing.

11. Trial counsel failed to object to the admission of highly prejudicial evidence at the petitioner's trial, including his inculpatory statement and a state exhibit that indicated he had tested positive for cocaine.

12. The state suppressed material exculpatory evidence in violation of *Brady v. Maryland*.

13. The jury engaged in misconduct and was subject to extraneous influences.

Doc. 1, att. 2, pp. 8–14. The petitioner then filed a supplemental application for post-conviction relief, again through counsel, with the following claims:

1. Appellate counsel was prejudicially ineffective for failing to raise trial counsel's ineffectiveness with respect to the petitioner's sentencing proceedings in his direct appeal.

2. Trial counsel was ineffective for failing to object to both the reallotment conducted by a trial judge who had already been recused from the case and the recusal proceeding that occurred in the absence of counsel.

3. Judge Comeaux's bias against the petitioner undermined his due process right to a fair tribunal.

*Id.* at 63–68. The petitioner also filed a motion to recuse Judge Comeaux from hearing his application for post-conviction relief, which the trial court denied.[3] *Id.* at 87–91.

The trial court reviewed petitioner's claims and determined that they were all without merit, with the exception of Claim 7 above, for which it ordered an evidentiary hearing. *Id.* at 77–83 (claims in original application); *id.* at 84–85 (claims in supplemental application). This hearing took place on December 13, 2013, with testimony from the prosecutor in the 2004 drug possession case, the petitioner's trial counsel from that case, and the petitioner. *Id.* at 92–151. At the conclusion of the hearing the trial court found that plea offers were properly communicated to the petitioner and that there was thus no merit to Claim 7. *Id.* at 147–49. Accordingly, it issued a final judgment denying all claims in the petitioner's application for post-conviction relief. *Id.* at 153.

The petitioner then filed an application for supervisory writs through counsel in the Third Circuit. *Id.* at 154–99. There he raised the following issues:

1.  The district court erred in denying the petitioner's claim that trial counsel was prejudicially ineffective for failing to advise him to accept a plea or to provide him clear information regarding his prospects at trial or his minimum sentence if convicted and treated as a habitual offender.

2.  The district court erred in denying the petitioner's claims that his trial counsel was ineffective for failing to file a motion to reconsider sentence and that his appellate counsel was ineffective for failing to either urge the preservation of the petitioner's exceptionality claim or the trial counsel's ineffectiveness for failing to preserve the claim. The district court also erred in denying the petitioner's request for an evidentiary hearing on this claim.

3.  The district court erred in denying the petitioner's claim that his trial counsel was ineffective for failing to investigate and argue that the petitioner was the most harshly treated possession only drug offender in Iberia Parish and was therefore entitled to a sentencing departure.

---

[3] The respondent and petitioner both assert that the petitioner sought writs in the Third Circuit and Louisiana Supreme Court on the trial court's denial of this motion, but was denied (presumably on the merits) in both venues. Doc. 1, p. 6; doc. 23, p. 4. We cannot locate copies of these judgments in the record provided. However, we have located a ruling from the Louisiana Supreme Court with corresponding date and case number in WestLaw. *State v. Quinn*, 118 So.3d 417 (La. 2013). Accordingly, we assume for the sake of argument that these representations are accurate.

4. The district court erred in denying the petitioner's claim that his trial counsel was ineffective for failing to move to recuse District Attorney Phil Haney from the case based on his personal vendetta against the petitioner's family and to move for dismissal of the habitual offender bill of information.

5. The district court erred in denying the petitioner's claims relating to the district court's reallotment of his case following its own recusal and the consequent lack of jurisdiction of the sentencing court.

6. The district court erred in 1) denying the petitioner's claim that trial counsel was ineffective for failing to move to recuse Judge Comeaux and that Judge Comeaux's bias against him violated his due process rights and 2) denying his motion to recuse Judge Comeaux from this post-conviction case.

Doc. 1, att. 2, pp. 164–98. The Third Circuit issued the following ruling:

> The Relator's assignments of error numbers one, two, three, and four of his application for post-conviction relief relate to his conviction. Those claims are meritless and are, therefore, denied.

> The Relator's assignments of error numbers five and six relate to his habitual offender adjudication and allotment of the trial judge. On November 13, 2008, the duly assigned trial judge, Judge Lori Landry, voluntarily recused herself from the case. Once Judge Landry recused herself from the case, any order issued by her subsequent to her voluntary recusal was null and void. La. Code Crim. P. art. 673; [remaining citations omitted].

> Accordingly, the Relator's habitual offender adjudication and sentence are hereby vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Doc. 1, att. 1, pp. 33–34. Both the state and the petitioner sought review of this ruling in the Louisiana Supreme Court.

In a ruling dated April 10, 2015, the Louisiana Supreme Court denied review of the petitioner's application with respect to the Third Circuit's partial denial of his writ. *State v. Quinn*, 163 So.3d 807 (La. 2015). With respect to the state's application, the Louisiana Supreme Court granted review. In another ruling dated April 10, 2015, it held that the Third Circuit had erred as consideration of errors relating to an habitual offender adjudication was precluded on collateral

review on procedural grounds.[4] *State v. Quinn*, 163 So.3d 799, 799–800 (La. 2015) (citing *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996) and LA. C. CR. P. ART. 930.3)). Accordingly, it reinstated the petitioner's habitual offender adjudication and sentence. *Id.*

### D.  *Federal Habeas Petition*

The petitioner then filed the instant petition through counsel on April 21, 2015, raising the following claims for relief:

1. The state courts were unreasonable in denying the petitioner's claim that trial counsel was prejudicially ineffective for failing to advise him to accept a plea or to provide him clear information regarding his prospects at trial or his minimum sentence if convicted and treated as a habitual offender.

2. The state courts were unreasonable in denying the petitioner's claim that trial counsel was ineffective for failing to file a motion to reconsider sentence and that his appellate counsel was ineffective for failing to either urge the preservation of the petitioner's claim or trial counsel's ineffectiveness for failing to preserve the claim.

3. The state courts were unreasonable in denying the petitioner's claim that his trial counsel was ineffective for failing to investigate and argue that the petitioner was the most harshly treated possession only drug offender in Iberia Parish and was therefore entitled to a sentencing departure.

4. The state courts were unreasonable in denying the petitioner's claim that his trial counsel was ineffective for failing to move to recuse District Attorney Phil Haney from the case based on his personal vendetta against the petitioner's family.

5. The Louisiana Supreme Court's opinion rendered the petitioner's claims on the sentencing court's lack of jurisdiction beyond appellate review, in violation of the petitioner's due process rights.

---

[4] That ruling provides:

> The court of appeal erred to the extent that it granted respondent Michael [*sic*] Quinn partial relief and vacated his habitual offender adjudication and sentence. *State ex rel. Melinie v. State*, 93–1380 (La. 1/12/96), 665 So.2d 1172 precludes consideration of any habitual offender adjudication error on collateral review. *See State v. Cotton*, 09–2397 (La. 10/15/10), 45 So.3d 1030 ("[A] habitual offender adjudication . . . constitutes sentencing for purposes of Melinie and La. C. Cr. P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence."). Respondent's habitual offender adjudication and sentence are therefore reinstated.

*Quinn*, 163 So. 3d at 799–800.

6.   The state courts were unreasonable in 1) denying the petitioner's claim that his trial counsel was ineffective for failing to move to recuse Judge Comeaux and that Judge Comeaux's bias against him violated his due process rights and 2) denying his motion to recuse Judge Comeaux from this post-conviction case.

7.   The state courts were unreasonable in failing to bar as violations of due process the petitioner's third and later habitual offender proceedings that resulted in his twenty year sentence.

Doc. 1, pp. 9–48. After filing the instant petition, he also timely sought reconsideration/rehearing from the Louisiana Supreme Court of its judgments filed on April 10, 2015, both of which that court denied. *State v. Quinn*, 171 So.3d 932 (La. 2015); *see* doc. 1, p. 9.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A.   *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d)

the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the instant petition was filed.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual

claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[5] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical"

---

[5] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C.  *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). A writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's habitual offender conviction and sentence became final on April 8, 2011, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore **353 days** accrued before the time limit was tolled by his filing an application for post-conviction relief on March 26, 2012. The Louisiana Supreme Court ruled on April 10, 2015, but the petitioner continued to receive the benefit of statutory tolling while it considered his motions for reconsideration and rehearing. *See Wilson v. Cain*, 564 F.3d 702, 704–07 (5th Cir. 2009) (finding that a judgment of the Louisiana Supreme Court was not final, for § 2244(d) statutory tolling purposes, until the court had ruled on a timely filed motion for rehearing). Accordingly, no additional time accrued against the limit before the instant petition was filed on

April 21, 2015. Thus **353 days** have run against the petitioner's 365 day limit, making the instant petition timely.

### B.  Exhaustion of State Court Remedies and Procedural Default

All of the petitioner's claims were exhausted in the state courts. However, the Louisiana Supreme Court's ruling on the application for post-conviction relief operates as grounds for a procedural default of the post-conviction relief claims relating to Judge Landry's recusal and involvement in the reallotment, as well as the claims relating to recusal of Judge Comeaux. The respondent does not raise the issue of procedural default. Yet, as noted above, that does not prevent this court from considering it.

Ordinarily we would order further briefing on the issue of procedural default, to ensure that the petitioner had notice of the issue and could raise defenses to it.[6] *See Magouirk*, 144 F.3d at 359 ("[W]hen a federal district court . . . sua sponte raises procedural default, failure to provide the habeas petitioner with notice and a reasonable opportunity to present argument against dismissal may . . . constitute an abuse of discretion.") However, the petition makes clear that the petitioner, through counsel, was aware of the significance of the Louisiana Supreme Court's decision as a bar to federal review. *See* doc. 1, pp. 36–41. There he argues that the procedural default amounted to a denial of his right to due process. We therefore consider his arguments under that claim as his objections to the imposition of procedural default.

It is long recognized that state courts have the final authority to interpret and reinterpret their own statutes. *Brown v. Ohio*, 97 S.Ct. 2221, 2226 (1977) (quoting *Garner v. Louisiana*, 82 S.Ct. 248, 254 (1961)). Construction of a state statute by the state's highest court "puts these words

---

[6] If petitioner believes that his own knowledge of the procedural bar was inadequate notice that this court might raise the issue of procedural default *sua sponte*, he may submit additional arguments against default in the objections he files to this report and recommendation. *Richardson v. Cain*, 2010 WL 1838642, *9 (E.D. La. Apr. 1, 2010) (citing *Magouirk*, 144 F.3d at 350, 360).

in the statute as definitely as if it had been so amended by the legislature." *Winters v. New York*, 68 S.Ct. 665, 669 (1948) (citations omitted). Thus federal habeas review generally does not invite reconsideration of a state court's application of state law, including procedural rules. However, an exception is made where the rule is "clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution."[7] *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007).

Here the Louisiana Supreme Court overturned the Third Circuit's grant of relief on the petitioner's claims relating to the habitual offender proceedings. In so doing, it relied on Article 930.3 of the Louisiana Code of Criminal Procedure, which sets out the grounds for post-conviction relief, and *Melinie*, in which the Louisiana Supreme Court held that Article 930.3 "provide[d] no basis for review of claims of excessiveness or other sentencing error post-conviction." 665 So.2d at 1172. Louisiana courts have long applied *Melinie* and Article 930.3 to bar consideration of claims based on habitual offender adjudication in applications for post-conviction relief, and this court as well as the Fifth Circuit have upheld it as grounds for procedural default. *McKeaver v. Cain*, 2013 WL 1402365, *2–*4 (collecting cases). Thus the Louisiana Supreme Court's application of same in this case provides an adequate and independent state procedural ground.

Here the petitioner argues that the Louisiana Supreme Court's decision undermined his right to due process by "deciding, for the first time, that a jurisdictional claim relating to a sentencing proceeding could not be considered in post-conviction review." Doc. 1, p. 40. However, the ruling at issue here also relied on *State v. Cotton*, where the Louisiana Supreme Court noted that "[a]n habitual offender adjudication . . . constitutes sentencing for purposes of [*Melinie* and

---

[7] *See also Jordan v. Watkins*, 681 F.2d 1067, 1080 (5th Cir. 1982) (quoting *Mullaney v. Wilbur*, 95 S.Ct. 1881, 1886 n. 11 (1975) ("On rare occasions [federal courts may] re-examine a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade consideration of a federal issue.'")).

Article 930.3], which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings . . . ." [8] 45 So.3d at 1030. In light of the foregoing, the ruling at issue here appears reasonably grounded in precedent and the petitioner cannot show that any subterfuge was involved. Accordingly, the ruling stands as grounds for procedural default.

A procedural default may still be avoided, however, if the petitioner can show cause and resulting prejudice for his default or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To establish cause, the petitioner must show that some external, objective factor impeded his efforts to raise the claim in a procedurally proper manner. A finding of fundamental miscarriage of justice, on the other hand, depends on a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986). The factual innocence standard means that the petitioner must show a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997). Here the petitioner asserts no external cause for the default, nor does he make a colorable showing of factual innocence. Accordingly, the procedural default stands and prevents our consideration of Claims 5 and 6 of the instant petition.

---

[8] We also note at least two instances in which Article 930.3 and *Melinie* were invoked by a Louisiana appellate court and supreme court as bars to post-conviction review of claims that a sentencing court lacked jurisdiction. *Johnson v. Andrews*, 2006 WL 2294864, *1–*4 (E.D. La. Aug. 4, 2006); *Madina v. Cain*, 2006 WL 2726506, *3–*4 (E.D. La. Sep. 20, 2006). The Eastern District of Louisiana deemed the state court ruling to be adequate grounds for a procedural default in both cases. *Id.*

### C.  *Substantive Analysis*[9]

Having determined which claims are properly before this court, we review them under the standards described above.

> **1.  *The state courts were unreasonable in denying the petitioner's claim that trial counsel was prejudicially ineffective for failing to advise him to accept a plea or to provide him clear information regarding his prospects at trial or his minimum sentence if convicted and treated as a habitual offender.***

The petitioner first alleges that he received ineffective assistance from his trial counsel, Richard Spears, when Spears failed to properly advise him to accept a plea deal and relate to him the ramifications of a habitual offender proceeding.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a

---

[9] The respondent provides very few citations within the Law & Argument of his response memorandum, thus requiring chambers to spend a great deal of time and effort to attempt to locate portions of the record which would support his assertions. We note only the assertions for which we were able to locate support and admonish counsel who authored respondent's response to rely on and cite to the record and appropriate federal case law in future memoranda to this court.

different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

Here the petitioner relies on Spears' admission during the evidentiary hearing that he was aware that the petitioner faced a minimum twenty year sentence if convicted of simple possession and then adjudicated as a fourth felony offender. Doc. 1, att. 2, p. 112. Spears testified that he had no recollection of communicating "those exact numbers" to the petitioner, but that "[w]e assume[d] in our discussions that a multiple offender bill was gonna be bad." *Id.* at 113. He recalled that he presented available plea offers to the petitioner, and that they had "significant discussions" even though the petitioner had no interest in taking a plea. *Id.* at 113–14. He also recalled the final plea offer, that the state would not pursue an habitual offender bill if the petitioner was sentenced to a sufficient term of years after pleading guilty to attempted possession or possession of cocaine with intent to distribute. *Id.* at 119. Spears stated that the petitioner would face a sentencing range of zero to fifteen years on attempted possession and two to thirty on possession. *Id.* Spears did not know whether such a deal would have left the petitioner "no worse than he is today." *Id.* at 119–20. This deal was communicated to the petitioner. *Id.* at 122. However, the discussion took place the morning of the trial. *Id.* at 122–23. As a result, Spears stated that he did not go into all possible sentencing ranges based on all possible charges. *Id.* at 124. However, he stated that he "would assume [he] told [the petitioner]" that his sentence would be more severe if he were convicted and then adjudicated as an habitual offender, and that he was "certain" that the petitioner already knew that. *Id.* at 123.

Meanwhile, the petitioner testified that "no information" about an habitual offender bill ever communicated to him. *Id.* at 125. He contended that he did not learn of the habitual offender bill until after he was sentenced on the original conviction. *Id.* at 140. There was discussion of

another plea offer where petitioner would have pleaded guilty to second degree kidnapping and possession with intent to distribute, exposing him to a sentence of thirteen to forty years. *Id.* at 126–36. The petitioner stated that he would have taken this deal had he known that he was facing twenty to life as a habitual offender. *Id.*

After hearing this conflicting testimony, the trial court was satisfied that Spears had adequately communicated all plea offers to the petitioner and the implications of being billed as a habitual offender. *Id.* at 147–49. The petitioner fails to undermine the trial court's finding on this issue or the Third Circuit's affirmation of same.

The petitioner also alleges that he received ineffective assistance due to his trial attorney's failure to disclose the weakness of his case in advising him whether to accept a plea deal. He bases this on the fact that his attorney admitted to his possession of a crack pipe at trial, which contained the residue amount of cocaine that was the subject of the drug possession charge.[10] However, as the Third Circuit noted, the petitioner was observed by one of the arresting officers holding a crack pipe. Doc. 25, att. 1, pp. 48–49. Although multiple crack pipes were seized from the room where he was arrested and the officer could not identify which one the petitioner had been holding, all of the pipes tested positive for cocaine residue. *Id.* at 49–50. Under Louisiana law, as the petitioner admits here, even a residue amount of cocaine is sufficient to sustain a conviction for possession. *State v. Sylvia*, 845 So.2d 358, 361–62 (La. 2003); *see* doc. 1, pp. 14–15. The potential of a felony conviction should have been apparent to the petitioner. Accordingly, we are not persuaded that the petitioner's attorney performed deficiently in advising the petitioner on plea deals and the habitual offender bill. The petitioner thus fails to show any right to federal habeas relief under this claim.

---

[10] This matter was deemed irrelevant at the evidentiary hearing and thus excluded from further inquiry. Doc. 1, att. 2, pp. 104–05.

> **2.  *The state courts were unreasonable in denying the petitioner's claim that trial counsel was ineffective for failing to file a motion to reconsider sentence and that his appellate counsel was ineffective for failing to either urge the preservation of the petitioner's claim or trial counsel's ineffectiveness for failing to preserve the claim.***

The petitioner next contends that he is entitled to federal habeas relief based on ineffective assistance by trial counsel in failing to file a motion to reconsider sentence. He also contends that his appellate counsel rendered ineffective assistance by failing to either urge the preservation of the claim or assert trial counsel's ineffectiveness under this theory. These failures resulted in the Third Circuit considering the excessive sentence claim only "as a bare claim of excessiveness" rather than weighing the particular factors of the petitioner's exceptionality claims and his contention that the trial court was therefore under a duty to reduce the mandatory minimum sentence. *State v. Quinn*, 38 So.3d at 1113.

Counsel's failure to preserve a claim for review may give rise to an ineffective assistance claim, but only where the petitioner can show that the unfiled motion or objection would not have been futile. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)).

Although Louisiana's habitual offender statute provides mandatory minimums, the trial court is under a duty to depart from that minimum if it finds that the mandated punishment "makes no measurable contribution to acceptable goals of punishment or that the sentence [amounts] to nothing more than the purposeful imposition of pain and suffering **and** is grossly out of proportion to the severity of the crime . . . ." *State v. Dorthey*, 623 So.2d 1276, 1280–81 (La. 1993) (emphasis added; internal quotations omitted); *see* La. Rev. Stat. § 15:529.1 (habitual offender statute).

The respondent contends that the petitioner is not entitled to relief as exceptionality had been raised and rejected at the petitioner's first two habitual offender sentencings. He notes that a

sentencing judge may only justify a downward departure from the mandatory minimum in habitual

offender cases upon clear and convincing evidence that:

> [the defendant] is exceptional, which in this context means that because of
> unusual circumstances this defendant is a victim of the legislature's failure
> to assign sentences that are meaningfully tailored to the culpability of the
> offender, the gravity of the offense, and the circumstances of the case.

*State v. Johnson*, 709 So.2d 672, 676 (La. 1998) (quoting *State v. Young*, 663 So.2d 525, 528 (La.

Ct. App. 4th Cir. 1995) (Plotkin, J., concurring)). Such departures should be made only "in rare

situations" and the sentencing judge must "articulate specific reasons why the sentence he imposes

instead of the statutory mandatory minimum is the longest sentence which is not excessive under

the Louisiana Constitution." *Id.* at 677.

Here the petitioner contends that a downward departure was warranted because, as he states

in his complaint:

a. his base conviction "was among the least aggravated drug offenses that
would qualify to be a basis of a habitual offender;"

b. a twenty year sentence for cocaine possession "is vastly
disproportionate to other similar offenders who, despite possession
convictions and previous felony convictions, are, with almost no
exceptions, able to avoid habitual offender sentences by either pleading
guilty or because the prosecution employs its discretion not to bring
them;"

c. the non-violent nature of the base conviction and predicate offenses; and

d. comparison to the minimum sentence available under Louisiana law
"for far more serious offenses."

Doc. 1, pp. 19–20.

Petitioner's factors fail to persuade us.  Petitioner's offense is a felony. The twenty year

sentence was not based solely upon the petitioner's 2004 crime but instead included three prior

felonies: two for simple robbery, from 1993 and 1996, and a possession of cocaine conviction from

2002. Doc. 27, att. 13, p. 18. The petitioner's assertion that the crimes were all nonviolent (an

assertion that also fails; see note 11 *infra*) is not persuasive because a lack of violent crimes is already factored into the mandatory minimum for third and fourth felony offenders. *Johnson*, 709 So.2d at 677. Comparison to more sentences for more serious offenses is also unavailing because, as noted above, the legislature explicitly imposed twenty years as a minimum sentence for fourth felony offenders. Furthermore, the Louisiana Supreme Court noted that selective enforcement allegations based on the district attorney's discretion in filing habitual offender bills are only supportable upon "a showing of discriminatory application based on race, religion, or other arbitrary standard or classification," none of which is alleged here. *Dorthey*, 623 So.2d at 1279 (La. 1993).

The petitioner also points to numerous character factors raised at his sentencing, including his family and community relationships, the assertion that he had achieved "significant and meaningful recovery" from his addiction at the time of sentencing, and his past as a star football player for Louisiana State University. Doc. 1, p. 24. However, none of these persuaded the sentencing court, which found that "there were several crimes against the person . . . in the two simple robberies that were committed." Doc. 27, att. 13, pp. 21–22. The petitioner fails to rebut this finding.[11]

---

[11] The petitioner incorporates briefing from his application for post-conviction relief. There he asserted that, though robbery was classified as a crime of violence, it did not qualify as such in his case because his worst offense was "when he snatched some money out of a cash register and ran." Doc. 1, att. 2, p. 22. He also referenced an affidavit from the victim in this robbery who was then working as the cashier. *Id.* at 34. She recalled that the petitioner handed her a note demanding money and kept a hand in his pocket, though she never saw a weapon. *Id.* The victim went on to state that the petitioner "was not violent towards me" and that she believed that the only reason she was afraid at the time was because of her youth. *Id.* She opined that he did not deserve a twenty year sentence. *Id.*

The petitioner fails to show how the taking of money by his actions, including one presumably designed to indicate he was armed, should not objectively qualify as a crime of violence. He also fails to introduce any evidence from the other robbery conviction. Furthermore, as the prosecutor pointed out at sentencing, the petitioner was involved in another crime against the person – the false imprisonment for which he received a misdemeanor conviction – in the same incident giving rise to his final possession conviction. Doc. 27, att. 13, p. 17.

Accordingly, it appears that any review of his sentence for a downward departure would have been futile; he is therefore not entitled to federal habeas relief under this claim.

### 3. The state courts were unreasonable in denying the petitioner's claim that his trial counsel was ineffective for failing to investigate and argue that the petitioner was the most harshly treated possession only drug offender in Iberia Parish and was therefore entitled to a sentencing departure.

The petitioner next alleges that his trial counsel ought to have uncovered the information cited in his application for post-conviction relief showing that he is the most harshly punished offender in Iberia Parish for his base conviction. *See* doc. 1, att. 2, pp. 36–39. He alleges that this information, if presented at his sentencing, would have shown that he was entitled to a downward departure from the mandatory minimum as a fourth felony offender.

The petitioner first points to the fact that only seven other defendants have been subject to sentencing as fourth felony offenders in Iberia Parish in the eighteen years leading up to his application for post-conviction relief. *Id.* at 36–37. He also shows that only two other defendants were billed as habitual offenders when their base conviction was drug possession, and alleges that his case is easily distinguished from these two. *Id.* at 37–38.

The respondent urges that the above is not compelling when viewed in the context of other Louisiana habitual offenders with cocaine possession convictions. He points out that defendants have been billed as fourth offenders after being convicted of cocaine possession and received the minimum twenty year sentence, even when their prior offenses were all comparatively minor and related to addiction.[12] Doc. 23, p. 22.  He also notes that the Louisiana Supreme Court has

---

[12] The respondent cites several decisions from various circuits of the Louisiana Court of Appeal, all of which uphold twenty year sentences on a fourth offender conviction. Particularly relevant for our purposes are those with a base offense of cocaine possession and comparable predicate offenses. *See State v. Legaux*, 658 So.2d 319, 324 (La. Ct. App. 4th Cir. 1995) (predicate offenses of possession of marijuana with intent to distribute, possession of a stolen vehicle, and unauthorized use of a credit card); *State v. Johnson*, 982 So.2d 260, 264 (La. Ct. App. 2d Cir. 2008) (felony theft, simple burglary, and unauthorized use of a movable); *State v. Hills*, 866 So.2d 278, 286–87 (La. Ct. App. 5th Cir. 2003) (simple burglary, possession of cocaine, and armed robbery); and *State v. Fleming*, 902 So.2d 451, 456–60 (La. Ct. App. 5th Cir. 2005) (simple robbery, felon in possession of a firearm, and burglary).

overturned a downward departure for a fourth offender with a base offense of cocaine possession and predicate theft offenses, finding that the defendant's crimes were not victimless even though all were in fulfillment of his drug addiction.[13]

Thus trial counsel's failure to investigate and argue comparable sentences on a parish level cannot satisfy the first prong of *Strickland*, as the argument appears underwhelming in light of reported Louisiana cases confirming that the mandatory minimum has been affirmed under similar circumstances.

### 4. The state courts were unreasonable in denying the petitioner's claim that his trial counsel was ineffective for failing to move to recuse District Attorney Phil Haney from the case based on his personal vendetta against the petitioner's family.

The petitioner next argues that trial counsel was ineffective for failing to seek the recusal of Philip Haney, the district attorney for the 16th Judicial District. As grounds for recusal he relies on his contention that he was the most harshly treated drug offender in Iberia Parish, outlined *supra*, and alleges that Haney had a vendetta against the petitioner due to his (the petitioner's) wife's political activities. To this end he cites the fact that Haney terminated a longtime prosecutor, Gregory Aucoin, because Aucoin supported Haney's political opponent in an upcoming election, as well as other accusations of retaliation from attorneys who opposed Haney. *See Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002); doc. 1, att. 2, pp. 40–41 (state application for post-conviction relief, incorporated into this petition and detailing other allegations). The petitioner also alleges that he and his wife were warned "by a former prosecutor and employee of Mr. Haney, more than

---

[13] There the court noted:

> Finally, the trial court stated that crimes of personal destruction did not warrant mandatory sentences. However, this policy decision is for the Legislature to make, not the judiciary. Even so, drug possession/use clearly does not effect [*sic*] only the user, but society in general through higher medical costs, higher unemployment rates, loss of tax revenue from those unemployed, etc. Other losses to society include theft or theft related crimes committed to support the drug habit.

*State v. Johnson*, 709 So.2d 672, 678 (La. 1998).

a year before Mr. Quinn was arrested, that Mr. Haney told him to actively look for charges to seek against the Quinns because of [Haney's] animosity for them." Doc. 1, att. 2, p. 41.

Assuming petitioner's allegations to be supportable, he never states when or how he communicated his suspicions about Haney to his trial attorney.[14] The petitioner remained under an obligation to assist in his own defense. Trial counsel should not be held as ineffective except upon a showing that he shared Quinn's knowledge of the facts underlying these allegations and still refused to seek Haney's recusal. Accordingly, there is no merit to this claim.

### 5. *The state courts were unreasonable in failing to bar as violations of due process the petitioner's third and later habitual offender proceedings that resulted in his twenty year sentence.*

Finally, the petitioner complains that the state's successive habitual offender adjudications violated his constitutional protection against double jeopardy and his right to due process. In particular, he contends that allowing the state multiple "bites at the apple," lightened its burden of proof and subjected the petitioner to harassment, expense, and embarrassment. Doc. 1, p. 46.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. U.S. CONST. amends. V, XIV. "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 109 S.Ct. 1892, 1897 (1989). Here the petitioner's claims relate to the first abuse.

The Fifth Circuit previously held that jeopardy did attach to a Texas habitual offender proceeding, preventing a second enhancement proceeding, where "the evidence at the first

---

[14] He also failed to allege same in his application for post-conviction relief. *See* doc. 1, att. 2, pp. 39–43. Accordingly, we find no error to the trial court's refusal to grant an evidentiary hearing as to this claim.

enhancement proceeding was insufficient to establish that the defendant committed one or more of the prior offenses necessary for the enhancement . . . ." *Bullard v. Estelle*, 665 F.2d 1347, 1349 (5th Cir. 1982), *vacated on other grounds*, 103 S.Ct. 776 (1983).  However, the Supreme Court reviewed a California habitual offender proceeding thereafter and ruled that retrial on a prior conviction allegation in noncapital sentencing proceedings does not implicate the Double Jeopardy Clause. *Monge v. California*, 118 S.Ct. 2246, 2250–52 (1998). Accordingly, *Bullard* is overruled by *Monge*. *See, e.g.*, *United States v. Norwood*, 252 Fed. App'x 623, 625 (5th Cir. 2007) (unpublished) ("The Double Jeopardy Clause is inapplicable to non-capital sentencing proceedings. [citation to *Monge* omitted]").

The petitioner thus has no claim under the Double Jeopardy Clause for his habitual offender proceedings. As he fails to allege any other specific due process affront under this claim, he has not shown any error to the Third Circuit's ruling on this claim nor any right to federal habeas relief.

## IV.
### CONCLUSION

The petitioner has not shown that he is entitled to relief under any claim. Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

  In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

  THUS DONE this 20 September 2016.

       _____
         KATHLEEN KAY
       UNITED STATES MAGISTRATE JUDGE